## BANK OF HOXIE *v.* HADLEY MILLING COMPANY.

### Opinion delivered May 31, 1915.

1. PRINCIPAL AND AGENT—COLLECTION OF FUNDS—RIGHT OF AGENT TO USE. —An agent with authority to collect money for his principal has no right to use the funds for his individual purposes, and it is not within the apparent scope of his authority to so use the funds.

2. PRINCIPAL AND AGENT—NOTICE OF AUTHORITY TO THIRD PERSONS— PROCEEDS OF COLLECTIONS.—Persons who deal with an agent with knowledge of the agency must take notice of the want of his authority to use the proceeds of his collections for his individual purposes.

3. BILLS AND NOTES—ACCEPTANCE OF DRAFT—GUARANTY—KNOWLEDGE BY PURCHASER—PRINCIPAL AND AGENT—APPROPRIATION OF DRAFT BY AGENT. —The doctrine that the acceptance of a draft amounts to a guaranty of the capacity and authority of the drawer, does not apply to a case where an agent misappropriates the draft of his principal to his own use, with the actual knowledge of the one who receives the draft from him.

Appeal from Craighead Circuit Court, Jonesboro District; *J. F. Gautney,* Judge; affirmed.

*Baker & Sloan,* for appellant.

1.   Under the ordinary rules of the Law Merchant, White, by accepting the draft, became liable to the bank. By his acceptance he affirmed to all subsequent holders that Burke had authority to draw.   62 Barb. 101; 3 Burr. 1354; 1 W. Bl. 390; 60 Minn. 189; 51 Am. St. 519.   If a bill be drawn by one professing to act as agent of the drawer, the acceptance admits his handwriting and authority as agent to draw.   Daniel on Neg. Inst. (3 ed.), § 537; 7 Taunton, 455; 1 McGloin, 161; 10 Bing. 51; Tiedeman on Com. Pap., § 230, p. 386; 3 Rul. Cases Law, § 360, note 4; 8 Ala. 163; 29 N. Y. 554.

2. The bank was an innocent holder, in due course of business, without any notice. 111 Ark. 263, 270; 109 *Id.* 107, 113; 102 *Id.* 45; Ib. 426; 94 *Id.* 387. The burden was on White to show that the bank took the draft in bad faith. 84 Ark. 1, 10; 95 *Id.* 582-6.

3. It requires actual bad faith, or dishonesty, to deprive a purchaser of negotiable paper of the characteristic of good faith. 2 Wall. (U. S.) 110; 101 U. S. 564; 102 *Id.* 444; 20 How. (U. S.) 367; Daniel on Neg. Inst. (3 ed.), § 775; 61 Ark. 81; 79 *Id.* 149; 84 Neb. 808; 122 N. W. 61.

4. No bad faith is proven, nor was the bank put upon notice that Burke was misappropriating funds. 36 App. Div. 112; 55 N. Y. Sup. 545.

*Lamb, Caraway & Wheatley,* for appellee, White.

1. The Bank of Hoxie was not an innocent purchaser. 104 Ark. 388, 394; 90 *Id.* 97; 94 *Id.* 102; 86 *Id.* 82; 29 *Id.* 500. It had notice of defect of title in Burke, on the face of the draft. Besides it knew Burke was merely an agent.

2. Where the buyer knows that the person he is dealing with is only an agent, he can not aid the agent in defrauding the principal by converting the property of the latter to the agent's use. 79 Ark. 401; 53 *Id.* 135; 42 *Id.* 22; 3 R. C. L., § 289; 34 L. R. A. 723; 35 Fed. 723.

*Hawthorne & Hawthorne* and *D. K. Hawthorne,* for appellee, Hadley Milling Company.

1. No authority was given Burke to collect in anything except money. One who deals with an agent is put upon notice of the limitations of his authority, and must ascertain what that authority is, and if he fails to do so, he deals with the agent at his peril. 117 Ark. 173; 46 Ark. 210; 105 *Id.* 111.

2. An agent, without express authority, can not accept any kind of commercial paper in satisfaction of a debt due the principal. Mechem on Agency, § 375; 1 Clarke & Skyles on Agency, p. 645; 1 Am. & Eng. Enc. Law, 1027. The bank knew this, and it was its duty at least to inquire. Daniel on Neg. Inst. (3 ed.), § 537.

McCULLOCH, C. J.   One of the appellees, Hadley Milling Company, a foreign corporation engaged in the manufacture and sale of flour, instituted this action against appellee White to recover the sum of $710, the price of a car load of flour sold to White by the plaintiff's agent, one J. E. Burke.   White was engaged in the mercantile business at Lake City, Arkansas, when he purchased the car load of flour, and about the time of the delivery of the flour to him he accepted a draft drawn on him by Burke in the name of the latter's principal, Hadley Milling Company, but payable to Burke's own order, for the full amount of the price.   The draft was drawn on January 30, 1913, and was payable February 15, 1914, and was signed "Hadley Milling Company, per J. E. Burke."   White indorsed his acceptance upon the draft. Burke assigned the draft before maturity to the Bank of Hoxie, a banking corporation at Hoxie, Arkansas, as collateral to secure his own debt to that bank for borrowed money.   Burke absconded without having accounted to his principal, for that and other amounts collected by him in similar transactions.   White admitted his liability for the price of the flour, and, after setting up in his answer the facts concerning the draft, asked that the Bank of Hoxie be made a party to the suit and that he be permitted to pay the sum due into court.   White paid the money into court upon order of the court, and the Bank of Hoxie was brought in as a party and filed its interplea asking judgment against White on the draft.   The case was submitted to the court sitting as a jury and judgment was rendered in favor of Hadley Milling Company against White, and the clerk was ordered to pay over the fund in court in satisfaction of that judgment, and judgment was rendered in White's favor on the claim of appellant, Bank of Hoxie.

The question presented here is whether or not there is sufficient evidence to support the findings of the court. It is unnecessary to discuss the question whether or not from the facts of the case it was within the apparent scope of Burke's authority to draw a time check in his own

favor for the price of the flour sold to White so that the latter would have been protected in paying a check drawn in that way. The testimony in this case, so far as would concern any controversy between Hadley Milling Company and White, is very similar to that which was brought out in the recent case of *Hadley Milling Company* v. *Kelley,* 117 Ark. 173, 174 S. W. 227, except that the Bank of Hoxie was not a party to the other suit and its rights were not involved in the controversy. The judgment of the court in the present case settled the controversy between Hadley Milling Company and White, and the latter has not appealed, so we are only concerned with the claim of appellant against White to recover on the draft.

(1-2) The undisputed evidence is that Burke's authority was to collect only in money, and that he had no authority to draw a draft in his own favor or to use the collections for his individual purposes. It is also undisputed that the cashier of the bank, when he accepted the draft from Burke, knew that it was for the price of flour sold by Burke for his principal, the Hadley Milling Company. In fact, the draft shows those facts upon its face, and that was sufficient to put the bank upon notice that Burke had no authority to use the draft for his individual purposes. The fact that Burke made the draft payable to his own order does not alter the controlling principle, which is that an agent with authority to collect money for his principal has no right to use the funds for his individual purposes, and it is not within the apparent scope of his authority to so use the funds. Persons who deal with an agent with knowledge of the agency must take notice of the want of his authority to use the proceeds of the collection for his individual purposes. *Smith* v. *James,* 53 Ark. 135; *Briggs* v. *Collins,* 113 Ark. 190, 167 S. W. 1114.

The use of the draft made by Burke constituted an attempt to misappropriate the funds of his principal, and even if White would have had to pay the draft in the hands of an innocent purchaser, he would have had no right to pay to one who had notice of those facts, and

the proof is undisputed that appellant was apprised of facts which made the transaction an attempt on the part of Burke to misappropriate the funds of his principal. Therefore, according to principles of law which are quite well settled, the bank has no rightful claim to the funds represented by the draft, for the simple reason that it participated in the attempt of an agent to misappropriate the funds of his principal.

(3)   This conclusion does not disregard the principle so earnestly contended for by appellant's counsel that the acceptance of a draft amounts to a guaranty of the capacity and authority of the drawer, for that principle does not apply to a case where the agent misappropriates the draft to his own use, with the actual knowledge of one who receives the draft from him.   The acceptor does not, by his act of acceptance, guarantee the authority of the agent to use the draft for his own individual purposes, and one who takes it from the agent, with knowledge of the misappropriation gains nothing, for the reason that his title to the draft is vitiated by the fraud of the agent.

The judgment is therefore affirmed.