WASSON v. TREECE.

4-3553

Opinion delivered October 15, 1934.

W. F. Reeves, for appellant.

S. W. Woods, for appellees.

MEHAFFY, J.   The appellees, who are the heirs at law of E. B. Treece, deceased, were the owners of an undivided one-half interest in property in Marshall, Searcy County, Arkansas, and the Bank of Marshall was the owner of the other undivided one-half interest. The Bank of Marshall, in October, 1929, filed a suit in partition against the appellees, and against Patti Treece as guardian for said appellees, who were all minors at that time, in the Searcy Chancery Court, asking for a partition of said property. A decree of partition was ordered by the court, and the property ordered sold, and the same was sold by a commissioner, and the State Bank of Marshall became the purchaser for the sum of $8,000.

On May 1, 1933, Eugene Treece, Winston Treece and Burnelle Treece, adults, and Barton Treece and Francis Treece, minors, by their next friend, Claude Treece, filed suit in the Searcy Chancery Court against Marion Wasson, State Bank Commissioner, alleging that they were the sole heirs at law of E. B. Treece, deceased, and that the property was owned as above set out, and that, prior to the partition, the Bank of Marshall occupied said premises, and paid the guardian of the appellees $30 a month as rental for their interest in the property. They alleged that, after the bank purchased the interest of appellees in said property, A. A. Hudspeth, as cashier of the bank, applied $2,600 of the money belonging to

appellees as payment of certain personal obligations owed by the guardian of appellees, and that the appellees received only $1,400 of the $4,000, and they asked judgment for $2,600, and that it be declared a lien on the undivided one-half interest of the property described.

A demurrer was filed and thereafter a substituted complaint. The appellant filed answer, and the cause was submitted on the following agreed statement of facts:

"It is agreed that the above-named plaintiffs are the heirs at law of E. B. Treece, deceased, who died intestate in Searcy County, Arkansas, before the year 1924, and that he left said children and a widow, Patti Treece, as his sole surviving heirs and widow.

"That in November, 1926, J. E. Treece died intestate, and that E. B. Treece was a son of J. E. Treece, and that among other property which the plaintiffs inherited from their grandfather's estate was an undivided one-half interest in the lot and bank building standing thereon, in Marshall, Arkansas, described as follows:

"Beginning 45½ feet west of the northwest corner of J. W. Coker's house, known as the restaurant, thence south parallel with said house 140 feet to the W. L. Baker property, thence west 25½ feet, thence north parallel with said house to a point due west of the place of beginning, thence east to place of beginning, being a part of block No. 7 in Marshall, Searcy County, Arkansas.

"That the Bank of Marshall, Arkansas, was the owner of the other undivided one-half interest in said lot and improvements, and in October, 1929, filed a suit in partition against the above-named plaintiffs as heirs at law, and against Patti Treece as guardian of said plaintiffs, who were all minors at said time, in the Searcy Chancery Court, asking for a partition of said property.

"That in March, 1930, a decree of partition was ordered by the court, finding that it could not be partitioned in kind, a sale of the property was ordered, and the same was sold by Sam Blair as commissioner

to the First State Bank of Marshall, Arkansas, for the sum of $8,000, on June 16, 1930, which sale was approved by the court and the commissioner ordered to pay all costs and divide the remainder according to the interest of the parties in interest.

"That the costs in said case were as follows:

| | |
|---|---|
| Allowance to plaintiff's attorney fee | $200.00 |
| Allowance to guardian *ad litem* for defendants | 25.00 |
| Commissioner's fee | 25.00 |
| Clerk's fees | 9.25 |
| Sheriff of Searcy County | 3.20 |
| Sheriff of Pope County | .95 |
| Printer's fee | 11.25 |
| | |
| Total | $274.65 |

and the First State Bank of Marshall, Arkansas, paid said fees and allowances, canceled notes, stamping the same as paid, including interest to the total amount of $2,740.37, one of said notes for $50 principal and $1.76 interest, being the note of the plaintiff, Eugene Treece, and notes aggregating $2,688.61, being notes signed by Patti Treece, and held by said bank, and turned over to Patti Treece, as the guardian of the plaintiffs, $1,140, on June 25, 1930.

"No payments were made by the purchaser, First State Bank, to the commissioner, except payment of court costs, and the settlement of the balance being between the cashier of the bank and Patti Treece, guardian of plaintiffs.

"That all of the $2,740.37 in notes canceled and marked paid by the bank and delivered to Patti Treece, were signed by Patti Treece alone and individually, except the $50 note signed by Eugene Treece as aforesaid.

"That the commissioner's deed conveying all of said lands to the First State Bank was delivered by the commissioner to said bank and recorded on June 19, 1930, in book 26, page 8.

"Plaintiffs filed this suit asking for judgment against the State Bank Commissioner in charge of the First State Bank of Marshall, Arkansas, on May 1, 1933,

asking judgment for $2,600, and that the same be declared a lien upon an undivided one-half interest in the lands aforesaid, with improvements.

"That the First State Bank of Marshall, Arkansas, became insolvent on September 1, 1931, and was taken over by the State Bank Commissioner, and has been in the hands of said State Bank Commissioner in liquidation ever since. The notice was published as required by law of the time within which claims could be filed under the law, and no claim was filed by the plaintiffs for $2,600 or any other sum, with the State Bank Commissioner, before the filing of this suit.

"Defendant in his answer made Patti Treece a party plaintiff, and had summons served on her, asking that judgment be rendered against her for the amount of the notes which the bank settled with her for, in case judgment was rendered against it, and more than 20 days expired before the regular September term, 1933, of the chancery court, and no answer or other pleadings was filed by her.

"We hereby agree that this cause be submitted to the court for decree in vacation, upon this agreed statement of facts."

The chancellor found that the appellees were the sole owners of an undivided one-half interest in the land described, and found that the Bank of Marshall owned the other one-half interest, and that theretofore the bank had brought a suit, and that the property was not susceptible of division in kind, and ordered the same sold by the commissioner. He further found that $4,000 was due the appellees, and that there was a lien retained on the property for the purchase money; that there was at the time of the decree due appellees in principal and interest the sum of $3,231.80, and decreed that the appellees had a lien on one-half interest for the sum found to be due them, and if said sum was not paid within 10 days the property should be sold for the purpose of paying said sum.

To reverse the decree of the chancery court, this appeal is prosecuted.

It is first contended by the appellant that this is a collateral attack upon the judgment and proceedings had at a former term of court. It appears from the pleadings, however, that this is not an attack upon the judgment at all, but that the judgment is expressly recognized, and all the proceedings up to and including the sale are valid, and this suit is to enforce the lien of said judgment, to compel the purchaser to pay the price of its bid. The evidence shows that the partition suit was regular; that the court ordered a sale, and that the bank became the purchaser. It also shows, however, that the bank never paid any of its bid to the guardian for the heirs, except $1,140. It appears also that at the time of the sale the bank held the personal note of Patti Treece, and, instead of paying to Patti Treece as guardian of the minor heirs, it paid to Patti Treece individually, or rather it applied $2,600 of the purchase price to the payment of her individual note, leaving a balance due the heirs at that time of $2,600.

It is contended that the sale was conducted in compliance with the law, and that the sale, when approved by the court, and the deed made and approved by the court, passed title to the bank, and that this suit for that reason could not be maintained.

It was the duty of the commissioner when the sale was made, to collect the money. It is not claimed that he did this. In fact, the undisputed evidence shows that he collected but $1,140 from the bank.

This court has said: "The payment of the purchase money was a prerequisite to the execution and delivery of the deed, which, not having been done, the sale should be set aside, the deed canceled, and declared void." *Phelps* v. *Jackson,* 31 Ark. 272.

This court has also said, speaking of sale by an administratrix: "She executed a deed to Dyer, but received no money in payment, assuming to collect the sum bid in her individual paper. That she could not do." *Ambleton* v. *Dyer,* 53 Ark. 224, 13 S. W. 926.

In the instant case the guardian sold the minors' land and did not receive the money from the purchaser,

but received her individual note which she owed the bank for $2,600. This she had no right to do. *Grooms* v. *Neff Harness Co.*, 79 Ark. 401, 96 S. W. 135; *Briggs* v. *Collins*, 113 Ark. 190, 167 S. W. 1114.

The bank was represented in all these transactions by its cashier. He had authority to represent the bank, and his actions are binding on the bank. 7 C. J., 549.

The bank knew that the property belonged to the minors; it knew that Patti Treece was their guardian.

"The rule in all these cases, that the purchaser or mortgagee is not bound to look to the application of the purchase money is subject to an obvious exception, that, if the purchaser or mortgagee is knowingly a party to any breach of trust by the sale, or mortgage, it shall afford him no protection. * * * It may be considered as the prevailing doctrine in the American courts that a purchaser from a trustee is not bound to see to the application of the purchase money, except where the sale is a breach of trust on the part of the trustee, and the purchaser has, either from the face of the transaction, or otherwise, notice or knowledge of the trustee's violation of duty; but, if he has such knowledge or notice as makes him a party or privy to the trustee's misconduct, the property will be affected in his hands with the trusts which previously attached to it." *Grider* v. *Driver*, 46 Ark. 109.

The cashier of the bank here not only knew all the facts, but participated in the transaction, and, instead of paying the money to the commissioner for the minors, delivered to the guardian her individual note for $2,600.

It is contended by the appellant that the appellees failed to file any claim with the Bank Commissioner. They were not required to file such claim, because they are seeking to enforce their lien against the property which the bank purchased and never paid for. They are not seeking any claim against the bank or the Bank Commissioner as such.

At the time of the partition suit and sale, all the appellees were minors. The oldest is now 22 years of age.

Section 6961 of Crawford & Moses' Digest provides: "If any person entitled to bring any action under any law of this State be, at the time of the accrual of the cause of action, under 21 years of age, or insane or imprisoned beyond the limits of the State, such person shall be at liberty to bring such action within three years next after full age or such disability may be removed."

The appellees were not barred from bringing this suit. It is true they, in the original suit, might have asked the court to order a resale of the property, but that remedy is not exclusive. They had a right to bring this action against the purchaser to compel him to complete the purchase by paying the amount of his bid. 35 C. J., 118.

The deed made, under the circumstances shown in evidence, was void, and the decree of the chancery court is correct, and therefore affirmed.